Court of Appeals for the federal claims and we will call the cases off of our calendar in the order in which they are listed. The first is Murdoch v. Castro. Counsel, you may come forward and begin. Good morning. I think what's important in this case is the fact that the letter was never created underneath an attorney-client privilege. The letter was created never with the intent to create, to have legal advice. The letter was created in a situation. You know, I have a I have a problem with this because, as you know, you're here on habeas corpus, correct? Yes. And under habeas, I don't want this to sound rather coarse, but we really don't care about issues of state law, whether this was appropriately handled as a privilege matter or not. The real issue has to do with the constitutional question in this case. So I'm not sure you're going to get a lot of traction in the time you have allocated to argue that the California courts screwed up their own privilege law unless you can convert that into a constitutional claim that might not get you anywhere. Correct. Cross-examination. The trial counsel did not have the ability to fully cross-examine the accomplice. The jury was underneath the impression that the only statement the accomplice ever made was one that implicated the Petitioner. But we had this other statement out there. There was never published to the jury. So, therefore, the jury was underneath a false viewpoint that he had made one consistent statement when he had not. We don't know what's in the statement. I'm sorry? We don't know what's in the statement, do we? We know — what we do know is this. By the — Ms. Perry's declaration, there was — Tell me about Ms. Perry's declaration. Was that before the State court at the habeas proceeding? Yes. Yes. Ms. Perry's declaration was in front of the State court at the habeas proceeding, and the declaration was submitted to the district court. And her statement — and I have it in the excerpt, too, that was filed. And her statement goes to the fact that it — it stated that Mr. DiNardo said that he made the statement implicating Petitioner under duress and — Well, but even that statement, that he made the — he made the statement under duress, we don't know what that means. All that that may mean is that he felt under pressure to testify against him, even though he didn't want to, because he was facing 25 years to life and was told by the police that if he was a good boy and cooperated, instead of 25 years to life, he'd get off with 12 years. So that that may be the coercion. That doesn't prove necessarily that he was fabricating his testimony. The two things, number one, I did ask for a hearing so I could have the entire letter brought in to the district court. I had no other way. You asked for an evidentiary hearing in Federal district court? Yes. Okay. Yes. And I had no other way. And what did you want — did you want to — did you want to see the letter? Yes. I mean, I — That would destroy the privilege, wouldn't it, once you've seen it? Well — I mean, if the privilege, as the State has said, is a valid one, it means you can't look at it. Well, if the Court is saying that it would destroy the privilege, then the privilege was destroyed when the State court judge saw it at trial. So therefore, if the privilege was destroyed at that point, defense counsel should have a cross-examination. It wasn't made public, though. Okay. When the State trial judge saw it, it was not made public. Okay. So it doesn't mean it has to be made public at this point, initially. Now, let me — let me put you a different question. All right. As Judge Trotter's pointed out, this is habeas. Yes. And under the statute, you have to show that the decision of the State court was contrary to established Federal law as established by the Supreme Court. It's a rather unusual standard. Is there any Supreme Court case that you know of? I don't know of any which has said that when some privileged — attorney-client-privileged document, that if that document might be useful, useful in cross-examining a witness, an important witness, that it's the denial of the right to use that document itself denies due process. Okay. Two ways. One, Lee v. Illinois that I cite goes if the right to cross-examine is infringed upon, that's a constitutional right. But that's something else. Yes. Did that involve attorney-client-privileged? No. Specifically, is there a case that says attorney-client-privileged? Not that I could find. But we do get to the point of where there's a privilege taken by a witness, his testimony should not be heard, and that was the second portion that I briefed when we're talking about a witness testifies and takes the Fifth Amendment. What do we do in that situation? We strike the testimony. That's a privilege. Taking the Fifth Amendment is a privilege. So therefore, when you had a witness here — It seems to me what you're arguing is not that what was done here violates a clearly established Supreme Court rule, but rather that there's some general law out there and that this comes within the confines of that general rule. No. It is still my paramount position this was not attorney-client-privileged material. Therefore — But that's — as Judge Trott pointed out to you, that is a matter of State law, whether or not it was privileged. And State — the State has told us that it was privileged in this case. Okay. But if it's an unreasonable application — Of what? Of State law, I still believe — if it's an unreasonable application to the facts and everything else, I still believe that this Court has the ability to grant the petition. Counsel, did you say if it's an unreasonable application of State law? State law. All right. I will step back on that point. But, you know, we're talking about the right of cross-examination. Okay. And the right of cross-examination is paramount. And if something is done to infringe upon that right by unreasonable application of State law or not, I don't think this Court is bound by that. Well, there's no question whether we're bound by that. The question is what is our authority under the new statute in dealing with habeas review of a State criminal conviction. You are talking about the most important right a defendant has, the right of cross-examination. Gee, I thought the most important right was the right to a lawyer or the right to a jury trial or the right to a — You know, the family faretta, you know. You can dress this up with whatever verbiage you'd like. It's an important right. But what case do you want us to read? What Federal case, what Supreme Court case do you want us to believe that you say inexorably leads you to the conclusion that it's clearly established Federal law by the Supreme Court that the right of constitution can trump a privilege in a State — I think Douglas — I really think Douglas v. Alabama does it. I mean, I really do. And the reason — How? Okay. Because Douglas v. Alabama talks about the situation where a privilege has infringed upon the right to full cross-examination. So I'm talking about the constitutional right of cross-examination and the use of a privilege. And that's really — if we're going to say it's an attorney-client privilege document, that's where we're getting here. Because if we don't have the right to a full cross-examination, especially with an accomplice who has potential motive to lie, then we haven't brought the truth out to the jury, and we have then an unreliable witness, and that really then brings us into Lilly v. Virginia, which the U.S. Supreme Court does not have the right  Now, the U.S. Supreme Court talks about that accomplices are unreliable witnesses, and we have unreliable — we can't — they talk about unreliable hearsay, but that's not here. We have an unreliable witness. So what we have here is an unreliable witness. Why is he unreliable? Because we don't have the full ability of cross-examination. He was pretty extensively cross-examined, wasn't he, about his deal with the prosecutor? Yes, but, you know, the most important part would be is, according to his own attorney, he lied in the letter. So now we — when is he a liar? He lied because of coercion. So cross-examination on the creation of that letter, that because of coercion pressure could potentially cause him to lie, would have put him in a very difficult position. And one never knows what's going to be elicited from cross-examination, what nuances he would have done on the witness stand. This was a very close case. What do we know about this letter that we're arguing about? There's some suggestion in the record that the letter was cooked up between the defendant and the person who wrote the letter. Factually, what do we know from the record about that? Is that just a bunch of representations by lawyers, or was there some testimony that the letter was cooked up between the two? Your Honor, I cannot attack that letter potentially might have been cooked up or not. I mean, I think that there's enough of a record that showed that that letter was created probably in a jail cell, where either the Petitioner was close by or had somebody influencing, all right? So he probably had something to do with it. But has that been factually developed in any place? I think it is. There's so many inferences in the record all over the place that circumstantial evidence exists on the point. I think I might have created Ms. Perry's declaration a little differently, but nevertheless, I think her declaration brings us to that point. I think the district attorney's statement where she states, which I have in the excerpt, that he did it under pressure from the Petitioner. Who was this lady, this Ms. Perry, who prepared this declaration? What was her connection with the case? Appellate attorney. A State appellate attorney. A State appellate attorney? Yes. State appellate attorney. She was able to get the letter brought in the client's case. State appellate attorney for your client? Yes. Yes. Yes. She saw the letter? She saw the letter. But she told you what's in it? I mean, here's the problem. Yes, she did, but that's not in the record. That's one of the problems that I have, is we don't know what we're dealing with. Let's go back to the Federal District Court for a second. You say you asked for an evidentiary hearing. Yes. And what was your purpose in asking for an evidentiary hearing? The letter. Two, two. The letter. Did you ask that the letter just be given to you, or did you ask that the letter be brought in at a sealed condition and turned over to the Court for examination? I don't know if I asked for it to be in a sealed condition, but I basically, my recollection is correct. I asked for either a deposition or a hearing with, I believe, Mr. Fuller, the trial counsel, or have him bring in the letter. I think I did in the alternative. And so you asked the District Court to give you an evidentiary hearing? Yes. And what did the other side say when you asked for an evidentiary hearing? I don't think there was any response. You don't remember. What happened to your request for an evidentiary hearing? Just denied? Was there any explanation given by the Court for denying it? No. So, again, here we are. The best case that I can see for your position is that somewhere in the Supreme Court's opinion, it says that the right to confront witnesses can trump state rules of evidence, state rules of privilege, and everything else, but only under circumstances where you balance the two. And I don't know how you balance anything without seeing the letter. The trial judge saw it. We haven't seen it. Nobody in the federal courts have seen it. So it would seem to me that one possibility is that somebody in the federal courts ought to see it. Ought we to ask for that letter to come to us? Or should we remand this to the district court with orders to hold an evidentiary hearing for the court to look at it in chambers and see what we're dealing with? I mean, I don't know whether it's a letter that just says they made me do it because I was looking at 25 to life or a letter that lays out in enormous detail that it was all a lie because the informant was pressured by the police so that he just made something up out of whole cloth. I think bringing the letter to this Court would be sufficient. I mean, what more do we really need than to look at the letter? I mean, yes, I probably would want more. But right now, in the confines of the letter we're not set up. We're an appellate court. We're not really set up to take facts and to make the kinds of determinations that may have to be made in the first instance in this case. I have no problem going back to the district court either. I'm just trying to answer the question. I mean, obviously, you're a learned panel. And I mean, looking at the letter, a lot of the questions can be answered. Let me ask you a different question about what happened at your request for an evidentiary hearing in the district court. Did you ask that the letter be made available to the district judge so that without breaching the privilege, the district judge could at least evaluate what was in the letter? No, I did not, in my recollection. I didn't ask for it. Why not? Because I didn't think of it. I'll be honest with you. I didn't think about it. So now are we into Strickland somehow here? I mean, it seems you may have waived that opportunity. No, I don't agree with that. I mean, I asked for it to be produced. It certainly can be produced in certain parameters. I'm not going to sit here and dance. I didn't ask. I didn't think of that. Okay. What else do you have to tell us, if anything? Or do you want to retain the rest of your time for rebuttal? I'd like to retain the rest of my time. All right. We'll hear from the other side. Thanks. Yeah, that's my evidentiary hearing. Good morning, Deputy Attorney General Rama R. Molina. You know, why don't you just ignore the microphone and talk to us? Okay. I would first state that it doesn't matter what's in the letter because, as this is a trial court, there was a denial of Petitioner's constitutional rights by the trial court's ruling in this matter. And I don't think... How do we know without knowing what's in the letter? Well, you have to look at what the prosecutor said and what the... The prosecutor never saw the letter. No, but the prosecutor... She says, I haven't seen the letter. I'm operating off of rank hearsay. Right. But DiNardo's own attorney saw the letter, and DiNardo's own attorney on the record stated that what's in that letter doesn't appear to be a truthful statement. So I think it could be... But that's his opinion. You mean we're bound on a constitutional issue by the opinion of some lawyer who says it doesn't appear to be a truthful statement? No, this court is obviously not bound by that. But if you take it a step further and look what the trial court did after DiNardo's counsel made that statement, the trial court took it in chambers, presumably, and looked at it and came out with its ruling that it was protected by the attorney-client premise. Nothing at all about constitutional issue. Judge Shelton said nothing about it. Just he said it's privileged. Right. And that's the question, not the answer. Well, I would submit, though... Whether the privilege can still survive in the face of the fifth of the right to confront witnesses. I would submit that it can. And then if I could further explain that the trial court's decision to apply the privilege, it couldn't go any further in explaining why it did that. I think, without violating the privilege of DiNardo's attorney-client privilege, because it would in some way have to disclose the contents of what was in that letter. Not really. The trial court could have easily said, I've considered the content of the letter, and I find that based on all the evidence in the case, that it does not violate anybody's right to confront witnesses. At least we'd have some kind of a statement like that, instead of just it complies with the privilege. That's true. The trial court... I mean, I handle many of those cases in federal court where judges said things like that, but I don't think that's the case that you have to look at if you're looking at sealed documents. And that's the aspect of this case that you have to look at. It was a sealed document. It was protected by the attorney-client privilege. And that it's not proper for the defendant to come in to federal court on habeas and try to pierce that privilege when this issue was already litigated in the State Trial Court. And I would agree, as the Court was seeming to lean, when questioning opposing counsel, that it's not here, this Court's not here to determine whether the State Trial Court applied California's attorney-client privilege in the proper manner under California's evidence code. Yeah, but the other side is saying that notwithstanding, it may have been perfectly correct, the ruling that it was privileged. Nonetheless, the privilege falls. You know, the Constitution's the supreme law of the land. You know that. State laws fall all over the place. Federal laws fall all over the place when subjected to the light of the Constitution. And that's what we're really dealing with. And I'm having a hard time figuring out how to weigh this case, assuming that we can have this issue before us as a matter of clearly established federal constitutional law, without knowing what's in the letter. In all the cases that I look at that are dealing with stuff like this, you get into a balancing situation. And I don't know how we can balance anything unless we look at the letter. Do you oppose the evidentiary hearing request in district court? No, we do not. You said let's have a – did you agree to have an evidentiary hearing? We did not. What happened? Did the judge just summarily say no evidentiary hearing? I'm going by what counsel said. I don't exactly recall the exact proceedings surrounding the evidentiary hearing, but I believe it just was summarily denied by the magistrate. Could you have an evidentiary hearing on this issue without disclosing, making public the text of the letter? No, I don't believe you could. It would be the same procedure again. Once you do that, the privilege is gone. Exactly. That would be the same procedure again. The magistrate would have to take the letter, review it in chambers, and determine whether the attorney might have been spot. Well, let me put to what it seems to me is the hardest case from your point of view. Suppose, in fact, in the letter he had said all of my testimony implicating Mr. Murdoch was a lie. It was all a lie. I made it up because the prosecutor and the police told me unless I gave such testimony, I could look forward to spending the rest of my life in jail, and I had no intent to do that. Let's assume that the letter – let's just assume the letter said that. I suppose then the question is, what, if anything, can or should be done about it? Even if that was the case, I would submit that any error in this case as described is utterly harmless, because three eyewitnesses identified the Petitioner in the bar with a rifle, and one actually identified the Petitioner's shooter. But they all identified – they all identified him, what, 10, 12 years after it happened? I mean, this isn't a case where 10 months after the incident, the trial ended. He disappeared. Indeed, didn't he say that – not Murdoch, but the other fellow – did Murdoch say that he didn't know – one of them said he didn't know there had been a murder until 10 years later when he was arrested. It seems to me – to me, your strongest case is that whatever happened in this case, you can't say that there's any Supreme Court decision that definitively states that in this situation, they had to – they had to have an opportunity to use the letter in cross-examining the witness. That seems to me to be your strongest case, I think. I would agree that that is a strong point, but I believe that there's other strong points in our case on habeas, that the standard of review for habeas Federal claims, that Petitioner has clearly not met that standard. Why not? Well, because there – as Judge Friedman is saying, the Petitioner has to show that the state trial court's decision violated or was contrary to some clearly established Federal law. Petitioner can't show that because nobody will show him the letter in a way that enables him to use that here. But we have a reasoned opinion from the California Court of Appeals. Did the Court of Appeals look at the letter? Yes, the Court of Appeals did look at the letter. Where does it say that, that the Court of Appeals read the letter? The Court of Appeals – I have an order where the Court of Appeals said that it was submitted under seal to the Court of Appeals, and that the Court of Appeals – Is that order in our record? Excerpt? I don't believe – I have it with me. I don't know if it's an excerpt. Please get it. I'm going to – If I may, on that point, Ms. Perry's declaration talks on that, too. Would you like me to hand it to the clerk? Sure. Your position basically is that no matter how damaging what is in the letter might be to the prosecution, there still is no Supreme Court case saying that in that case, the Supreme Court is not responsible for the offense for cross-examination. That is – that's correct. That is one of, I believe, a very strong point for our – for our position. But I believe that there are others strong points as well, as I detailed under harmless error analysis for Federal handlers. Why do you say it's harmless error? Because there was extensive cross-examination? And identification by three eyewitnesses. Yes, that's why I believe that. DiNardo admitted on cross-examination that he'd be out of prison in five years, less than five years, for agreeing to testify against Petitioner. And he also said that, you know, he probably wouldn't have testified against Petitioner if not given that opportunity. So, I mean, at that point, his motive, his bias is clearly exposed to the jury. But, counsel, isn't that a little different than saying I made it all up? Yes, that is different. But it exposes the bias that, and I believe in a sufficient manner, exposes the bias on DiNardo's part. Where does it say in this order that the Court reviewed the letter itself? It says that it denied the – the – You said the Court said that it looked at the letter. I don't find that in here. Having reviewed the motions of Murdoch 4.1, an order unsealing the transcripts of the in-camera hearings on June 30, 1995, December 12, 1995, and December 26, 1995, the motion is granted. So do those transcripts show that the Court looked at the letter itself? Two, an order unsealing the letter dated December 1st. The motion is denied. In the Court's opinion, there has been inadequate showing that the attorney-client privilege has been waived. The addresses – the addressees on the envelope appear to have been made by different hands, and there is no showing that the letter was ever sent to or received by anyone other than counsel for DiNardo. An order granting an extension of time to file the appellant's opening brief. That's granted. I don't find anything in here that says we've looked at the letter. On footnote 5 in the Court of Appeals opinion, that's in the excerpt of the record. I'll give the – that's in the supplemental excerpts of record on page 48. The letter remains under seal. On December 3, we granted Murdoch's appellate counsel access to the letter. On April 1, we denied Murdoch's motion to unseal the letter, ruling he had failed to show the attorney-client privilege had been waived. On August 1, we granted the people's request to view the outside of the envelope but not the letter itself. I read this, too, and I – that's why I asked. Where does it say that they saw the – they read the letter? I think that it can – I thought that that order had said that. I misconstrued that letter, but I think it could be inferred that by submission of the letter of – to the appellate court under seal, that the Court of Appeal obviously had the right to examine it. It was determining DiNardo's claim, and that based on this footnote and that order, it could be inferred that the appellate court did. Wouldn't you think if the Court of Appeals had actually examined the letter, it would have said that we have – we have reviewed the letter and we see nothing in it to justify the conclusion that the attorney-client privilege has been waived? You'd think if – since this thing was kept under seal and nobody saw it except the trial judge, you'd think if the Court of Appeals was – had looked at the letter, it would have said so. I mean, the fact that they keep talking about sealing and unsealing and they allow the people to look at the envelope but not the inside and so on, that to me, as I gather, to Judge Trock, doesn't indicate that they looked at it. Maybe they did, maybe they didn't. We don't know. But the court did say in that footnote 5 that he had failed to show the attorney-client privilege had been waived. Well, that again – there you go again, though. That's privilege. We're talking about the right to confront. I don't see – I read this thing so many times, I never want to see it again, looking for something that said that we've balanced the information in the letter and it's irrelevant, it's harmless, it has nothing to do with confrontation. The guy was confronted all over the place. Maybe it was cumulative. Cumulative. They looked at it and said it was cumulative. But I can't find anything that even begins to touch on that. But it seems interesting to me that the state – how do we know this isn't perjure testimony? I mean, you know, you've read the stuff that the Ninth Circuit has written on this. The state's got a freestanding obligation to protect the system from perjury. And this looks like a huge possibility. Maybe not. Maybe nonsense. But there's that possibility there. It seems to me the state would want to get to the bottom of this. Well, the prosecutor in the trial – Never read the letter. She didn't read the letter. But she did state, based on the witnesses, and he was the author of the letter, DiNardo, based on his representations, that it was – everything in that letter was not true. So she brought it to the attention of the trial court. Also, now we rely on – the prosecutor's trying to put this guy in jail for life. And now we're going to rely on her saying, it's no big deal. You don't get to see it, but you've got to trust me. It's no big deal. No, because she put it in the hands of the trial court. And the trial court looked at it and said that the attorney-client privilege had not been waived. Again, attorney-client privilege. Nothing about the Fifth Amendment right to confront witnesses. The trial court – I agree with you. The trial court did not specifically rule on that matter. But if you look at the rest of the record, I don't believe that the cross-examination of DiNardo was affected by the exclusion of this letter. Have you ever been a trial lawyer? Yes. Have you ever handled informant cases? Do you know who Leslie Vernon White was? Are you aware of the scandal in Los Angeles in the 1980s and the grand jury investigation and the disaster down there behind the misuse of informants? I'm afraid not. Right and left cases were falling apart. And this is a huge scandal in Los Angeles County in the 1980s. Are you aware of that? I'm sorry, Your Honor. I'm not aware of those specific proceedings. Those who don't remember the lessons of history are condemned to live them again. But I would say in this case that the prosecutor – there was no bad actions on the part of the prosecution. Well, I might differ with you on that. I think the prosecutor should have told this guy, look, pal, your deal is out the window unless you're going to waive the attorney-client privilege and let me see that letter so I can tell whether you're going to tell the truth when I put you on the stand. Because when we put you on the stand, we've got an obligation to make sure you're telling the truth. You waive that privilege or the deal's off. The guy would have waived the privilege. I believe that the prosecution from the evidence that she had of three independent eyewitnesses was corroborating – Who had been unable to identify this petitioner ten years before from photographs. And ten years later, after being put in a lineup, say, oh yeah, now that's the guy. Ten years later. I would still say, Your Honor, under, you know, the Court of Appeal – the California Court of Appeal looked at this and said that the – If they had looked at the letter and said that, you'd be absolutely right. That's the problem I'm having with the case. I can't find anywhere that says they looked at it. And so that might be an unreasonable determination of fact. Under federal law, it opens a lot of doors that might not otherwise be open. I don't see how you can determine that it's irrelevant or harmless without looking at it. Well, under the harmless error standard, let's just say, as Judge Friedman said, in the worst case, if it said this was a whole made-up story and I did it because the police coerced me – And you think that's harmless error? I would say that in this case, it would be harmless because it went to the heart of whether DiNardo could be effectively cross-examined.  But cross-examining thoroughly isn't the same thing as effectively, is it? He was cross-examined at length. Yes, he was cross-examined. But if you don't have available critical information to show him, you can cross-examine him from 10 in the morning until 4 in the afternoon and not be able to break him down because you can't confront him with the one thing that he couldn't explain away. But the effectiveness of the cross-examination went to what DiNardo's motive was for testifying in this case. And it was clearly spelled out in the cross-examination that his motive and his – that his motive in testifying against Petitioner was that he was getting a deal with the prosecution. So you don't think a letter – a letter that says, my testimony is going to be perjury, you don't think that's really all that big of a deal? No. A letter from the witness saying, I'm going to perjure myself in court. Why? Because the cops threatened me. That's not a big deal. No, that is a big deal. You bet it's a big deal, especially when the guy started out saying that he had nothing to do with, he doesn't know who this guy Murdoch is. His whole testimony is rife with all kinds of crazy stuff. I never knew anybody was killed, I wasn't the one with a gun. And this is hallmark trouble when you're dealing with accomplices. It wasn't specifically stated from the letter, but I think if – without looking at the contents of the letter and violating the attorney-client privilege of DiNardo, if we see – Judges can look at that stuff all the time, the way Sheldon did. I mean, I did this many times as a United States attorney. You had to submit sealed information to the trial court. The trial court takes a look at it and says, it doesn't have to go to the defense. They seal it. It comes up to us. The Ninth Circuit looks at sealed information, tells you don't worry about it. No big deal. That's the end of it. They never saw a bit of it and the privilege wasn't waived. That's the way privileges are handled all the time. Right. So with that explanation, wouldn't it also be reasonable to conclude that the court of appeal did examine the letter when it was submitted to the court of appeal under seal and that they found also that the attorney-client privilege had not been waived? Maybe. As Judge Friedman said, it would have been wonderful if they had said that. I can't find any. I looked and looked and looked, which is why I was asking you about this, for some indication that the court of appeal had looked at it and made the balancing judgment that it didn't deprive anybody of effective cross-examination because there wasn't anything in it that wasn't cumulative or worthwhile. It may have been just a typical, the cops threatened me with life and so I gave them this story. What do you want from me? With Murdoch hanging over his shoulder. I mean, that probably would be useless. But again, I just don't know how we make that determination without somebody looking at it. Do you have any objection to the Federal District Courts looking at it? Yes, I would object because under the habeas standards, I don't think it's necessary. As I said, that if this Court looks at the State court, the State trial court's ruling and the California court of appeals' ruling on this issue, there was no violation of clearly established Federal law. And that under habeas review, that's all you have to show. Well, starting with Davis, doesn't it, isn't it clear from Davis that the right of confrontation can trump State laws? Yes, it can. So why isn't it clearly established that the right of confrontation can trump State laws and all we're dealing here was with another State law? But under subsequent U.S. Supreme Court decisions, the United States Supreme Court has also said that the right of confrontation and cross-examination can also bow to accommodate other legitimate interests. And how do you make that determination that it bows? Balancing. Yes, balancing. And the United States District Court. But not balancing in the abstract against the privilege, balancing against the substance of the information. I would say the United States Supreme Court's balancing in Davis and in subsequent cases. Holden and all the rest. That if you look at it in terms of that precedent, that there was no violation of clearly established Federal law. And I acknowledge that we don't have the substance of the letter. But even with that, I would submit that there is no violation of clearly established Federal law. You know, we don't always have all the facts there. And that's why, you know, I believe that the habeas standard review is different than looking at the merits of a State trial court's decision. Anything else? I would just, again, just bring the Court back to if it is inclined to find error, because the letter was not submitted that under Breck v. Abramson, that there was the error was utterly harmless and that the that would not entitle the Petitioner to any habeas relief in this case. And that's all I have. Thanks. One thing. I apologize for not standing when I addressed to help you on the order. It will sanction you no less than $100,000. Okay. Two things. The Attorney General states that three eyewitnesses identified Mr. Murdock. I respectfully disagree. The only identification you have was by Miss Spence, the bar patron owner, and that was after a long time, and she could not identify him in a photo six-pack shown to her right after the crime. My request for the letter is contained in a motion for discovery. It's in the docket that I reviewed. Is it in our excerpt of record? It is not. I did not think of including that. I can do that. I apologize. I'd like you to get that to us immediately. Okay. I will do that. It was denied, though, without any explanation, but I will get all that in an excerpt right away. My final point is I'm bothered on this case where you have an accomplice who waited almost to, when he had no choice to come forward and agree to testify against Mr. Murdock. He waited until after his jury trial, after he was given a life sentence, after he was sent up to prison, and then we knew his life was over, okay, now I'm going to testify. And then we have that letter hanging out there. And the right to cross-examination is an important right, but when you have an accomplice who has a motive to lie, and in this case, every single motive to lie, I just think it becomes very paramount. And that's what bothers me. I do not believe that the jury had the entire truth to look at. Yes, maybe Mr. Murdock did this. Maybe he did not. The problem is we're sitting out there with a big question mark where the really the only evidence in the end that convicted him was the accomplice's statement. The prosecution said that during Mr. DiNardo's sentencing hearing, and I think it's clear. You had a fingerprint by Mr. DiNardo, and that was fait accompli for him, but you had nothing with Mr. Murdock except a very, very old eyewitness that was taken care of by Ms. Pesdek at the hearing. Thank you. All right. The case just argued, and ably so. We thank you both very much. It's ordered and submitted. We'll get you a decision as soon as we can. You might want to Google up Leslie Vernon White just for light reading. Actually, we don't like this. If I may, does the Court want to keep my order from the Court of Appeals? I'd be happy to supply a copy to counsel. No, I can get another copy. Why don't you get another copy? I'd like to keep it. Thank you both. The next case on the calendar is Smith v. Lewis.
judges: Friedman, Trott, Rawlinson